WALL, Jr., Master, etc., *v.* NINETY-FIVE THOUSAND FEET OF LUMBER.[1]

*(District Court, S. D. New York.* February 1, 1886.)

1. CHARTER-PARTY—FREIGHT—PRIOR ORAL AGREEMENT—EVIDENCE—MANAGING OWNERS—POWER OF ATTORNEY.
   The master of a vessel at Pensacola offered H. Bros., acting for W. & Co., of New York, a charter of his vessel, to take lumber to New York at nine dollars a thousand feet. The managing owners, at Boston, wishing to get the vessel, which had been long in southern ports, into their possession, requested W. & Co. to take the charter, and agreed that only eight dollars a thousand should be charged against them under it. The charter was thereupon effected. On the arrival of the vessel, W. & Co. refused to pay more than eight dollars, and the master libeled the lumber to recover the charter price of nine dollars. It appeared that the managing owners not only represented a majority in interest of the owners, but held a power of attorney, signed by various owners and by the master, who owned one-eighth, which authorized the managing owners, among other things, to obtain possession of the vessel, and to settle freight-bills. *Held,* that the power of attorney gave the managing owners authority to settle bills for freight, and, as incident to that, to agree on a remission of one dollar per thousand; that this authority prevailed over the master's authority, and that the oral agreement prevailed for a remission of one dollar per thousand, upon the price named in the subsequent written charter, which was signed in part execution of the prior oral agreement; and, that agreement being fully proved, there could be no recovery over eight dollars per thousand.

2. DEMURRAGE—VESSEL AGROUND—THREE DAYS ALLOWED.
   Claim was also made to recover for 11 days' demurrage. *Held,* that charterers were not liable for delay while the vessel was aground without their fault, nor for delay in getting a berth caused thereby; and that, after deducting for such delays, but three days were left for which libelant was entitled to demurrage.

In Admiralty.

*Goodrich, Deady & Platt,* for libelant.

*William Hildreth Field,* for claimants.

BROWN, J. The controversy in this case has arisen out of the difference between the master of the schooner Sarah Potter, and her agents or managing owners. In the spring of 1880, Cousens & Pratt, of Boston, owning and representing the majority in interest of the schooner, which for some years had been run by the master in southern ports, were anxious to bring her to this vicinity. On the seventeenth of March they executed a charter-party to Mosely, Wheelwright & Co. for the transportation to Boston of a cargo of lumber from Pensacola, where the schooner then was, at $8.50 per thousand. The master, on the presenting of the charter, refused to recognize it, or to load the schooner. Subsequently, on the third of May, 1880, the master, at Pensacola, executed a charter to Hyer Bros., of that place, for a cargo of lumber to New York, at the rate of nine dollars per thousand. She was thereupon loaded, and brought to New York. Hyer Bros. were in reality acting for the firm of W. D. Wheelwright & Co., of New York, the same firm as Mosely, Wheelwright

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

& Co., of Boston; and the cargo brought was the same cargo referred to in the previous charter. Cousens & Pratt had in the mean time requested Wheelwright & Co., of New York, to take the charter offered to Hyer Bros. by the captain, at the rate of nine dollars, and had agreed with the charterers that only eight dollars per thousand should be charged against them under it. Upon the arrival in New York, the charterers refused to pay but eight dollars a thousand, and this libel was filed by the master to recover the charter price of nine dollars a thousand, with 11 days' demurrage.

The evidence shows, not only that Cousens & Pratt represented the majority in interest, but, upon testimony that I think should be held satisfactory, that they held a power of attorney signed by the master, who was a one-eighth owner, and by various other owners, amounting altogether to forty-two sixty-fourths, giving them authority, as ship's husbands and managing owners, to attend generally to all the business of the ship, including the chartering of her, as well as the collection and settlement of bills for freight. As the power of attorney was lost, having been destroyed by water, there is possibly some uncertainty as to its precise terms; and it may be that the express authority to charter the schooner was not inserted; but, in the view that I take of the case, that is not material. Under the other powers contained in that instrument, they were authorized to obtain possession of the vessel; to take such steps as might be necessary for the purpose of settling her freight-bills; and to make such agreements in that behalf as, in their judgment, were necessary. Upon the evidence it is clear that the arrangement with Wheelwright & Co., to accept the charter of the third of May, was made for the purpose of bringing the vessel within their reach, and on an agreement to charge but eight dollars a thousand for the lumber, notwithstanding that the charter price was nine dollars. They have so testified upon this trial. The power of attorney clearly gave them authority to settle bills for freight, and, as incident to this power, to agree upon a remission of one dollar per thousand, if they would accept the charter. This authority bound the master, as well as the other owners who executed the power of attorney. If the remission of one dollar in the freight was an abuse of their power, those interested in the vessel must look to the agents to answer for it. The agreement is valid between the agents, who were the managing owners, and Wheelwright & Co., the claimants. It was an agreement outside of the charter-party and independent of it. It embraced the subject of the execution of the charter-party, as a part of the prior oral agreement, upon the condition of a remission of a dollar per thousand. That agreement is fully proved. There is no dispute of the fact. It was made by the ship's husbands and agents, who, as against the captain, had the prevailing authority; and that agreement is therefore the prevailing agreement. No recovery can be had, therefore, in this action beyond eight dollars per thousand.

2. As respects demurrage, it appears that the vessel was in charge of a marshal from the time she arrived until after her discharge was completed. I find that, deducting Sundays, and the time lost when the vessel was aground without any fault of the claimants, and the loss of a berth occasioned from this cause, and her subsequent not moving when directed, there were but three days left for which demurrage should be charged. This, at $36 per day, amounts to $108, which will be allowed, with interest from July 20, 1880.

The rate of eight dollars per thousand having been paid shortly after the libel was filed, a decree will be entered for the amount of demurrage, with interest and costs.